IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

VICTOR T. WARD,

    Plaintiff,

        v.                              CIVIL NO.: WDQ-11-1004

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Victor T. Ward, *pro se*, sued the Commissioner of the Social Security Administration (the "Commissioner") for race and sex discrimination, and retaliation, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII").[1]  For the following reasons, the Commissioner's motion to dismiss or for summary judgment will be granted, and Ward's motion to amend the complaint will be denied.

---

[1] 42 U.S.C. §§ 2000e *et seq*.

I. Background[2]

Ward is an African American man who works as a claims authorizer in the Office of Disability Operations of the Social Security Administration (the "SSA"). ECF No. 1, Ex. 1 at 1-2. Ward's second level supervisor, Janet Johnson, and his first level supervisor, April Adams, are African American women. ECF No. 1, Ex. 1 at 15.

On September 21, 2009, Johnson gave cash performance awards to employees in Ward's office. ECF No. 1, Ex. 1 at 16. Of 40 employees, 24 received awards: 16 African American females, five white males, two white females, and one African American male. ECF No. 10, Ex. 6, 11. About 63 percent of African American employees in the office received an award, and about 54 percent of non-African American employees did. *Id.* Sixty percent of the men in the office received an award, and about 57 percent of women did. *Id.* The recipients represented 64 percent of the African American females (16 out of 25), 50 percent of the African American males (1 out of 2), 50 percent of the white females (2 out of 4), and 71 percent of the white males (5 out

---

[2] Because it will consider documents that were not attached to or incorporated into the complaint, the Court will treat the Commissioner's motion as one for summary judgment. *See E.I. de Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011). Ward's evidence "is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

of 7) in the office.[3]  *Id.*  Ward did not receive an award.  ECF No. 10, Ex. 8 at 2-3.

On September 28, 2009, Ward emailed Adams and Johnson to complain about not receiving an award.  ECF No. 10, Ex. 12.  He argued that white male and African American female coworkers who received awards did not perform all the work that he did, and that he was "the only claims authorizer trained and performing in all aspects of the claims authorizer position" in his office.  *Id.*

On October 28, 2009, Ward sought Equal Employment Opportunity ("EEO") counseling, alleging that he had not received an award because he was an African American man.  ECF No. 10, Ex. 3 at 1, 3.  Counseling did not resolve his complaint.  *Id.* at 4.  On November 4, 2009, Ward received a notice of his right to file a formal complaint with the SSA's Associate Commissioner for Civil Rights and Equal Opportunity within 15 calendar days.  *Id.* at 9.

On December 23, 2009, Ward signed a formal complaint, which the SSA received on January 7, 2010.  ECF No. 10, Ex. 1 at 5.  On January 25, 2010, the Associate Commissioner for Civil Rights and Equal Opportunity told Ward that the agency had received and would investigate his complaint.  ECF No. 10, Ex. 2.

---

[3] One Hispanic or Latino employee, and one American Indian or Alaska native employee did not receive awards.  ECF No. 10, Ex. 6.

The SSA investigated Ward's complaint from February 24 to May 14, 2010. ECF No. 10, Ex. 21 at 3. Adams, who decided which employees would receive cash awards, denied that she based the awards on race or sex, and noted that another African American man in Ward's office had received an award. ECF No. 10, Ex. 21 at 8-9. Adams claimed that she had responded to Ward's email on October 2, 2009, explaining that Ward had a smaller workload than some workers who won the awards, and other workers performed duties he did not. *Id.* at 8-9; ECF No. 10, Ex. 12. She told the investigator that Ward did not receive an award because he "only perform[ed] the bare minimum." ECF No. 10, Ex. 21 at 8.

Ward denied that Adams had ever responded to his September 28, 2009 email, and maintained that African American male claim authorizers had "been mistreated . . . compared to other groups." ECF No. 10, Ex. 21 at 10. In addition to race and sex discrimination, Ward alleged retaliation as a reason he had not received an award. *Id.* at 6. Ward said that he had told Johnson that a former manager was "abusing his position" by soliciting a $2,500 loan from Ward. ECF No. 10, Ex. 7 at 2, 7. The former manager filed an EEO complaint, and Ward was contacted on November 18, 2009, to be a witness in that investigation. ECF No. 10, Ex. 21 at 6. Ward believed that the former manager's complaint was "going on back in September

4

2009," when the awards were announced. ECF No. 10, Ex. 7 at 3. Adams denied that she had considered Ward's participation in any EEO investigation when deciding who would receive an award. ECF No. 10, Ex. 21, at 7-8.

On June 28, 2010, the SSA sent Ward the investigation summary and a notice of his rights, which stated that Ward had 30 days to request a formal hearing before an administrative judge of the Equal Employment Opportunity Commission ("EEOC"), or a final SSA decision without a hearing. ECF No. 10, Ex. 20 at 1-2. If Ward did nothing, the SSA would issue a final decision based only on the investigation file. *Id.* at 2. Ward never responded.

On January 13, 2011, the SSA issued its final decision, finding that his managers had "articulated legitimate, nondiscriminatory reasons for its action" (not giving Ward an award because of his history of doing "only the bare minimum"). ECF No. 10, Ex. 22 at 1. A notice accompanied the decision, informing Ward that he had 90 days to file a federal lawsuit. *Id.* at 6. On January 14, 2011, Ward received the agency's decision by email. ECF No. 10, Ex. 23.

On April 15, 2011, Ward filed this suit, alleging race and sex discrimination, and retaliation, in violation of Title VII.[4]

---

[4] Ward's factual allegations consisted solely of two attachments: the summary of the EEO investigation, and the SSA's final

On July 28, 2011, the Commissioner moved to dismiss or for summary judgment.[5] ECF No. 10. On July 29, 2011, the Clerk of the Court told Ward that he should "respond to and explain the facts or matters stated in the motion." ECF No. 11 at 1. The Clerk also provided a copy of Fed. R. Civ. P. 56, which states that if a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the Court may "consider the fact undisputed" or "grant summary judgment." *Id.* at 2. On August 9, 2011, Ward responded to the Commissioner's motion with one sentence: "Plaintiff moves for hearing before trial." ECF No. 13. On August 29, 2011, the Commissioner filed his reply. ECF No. 15.

II. Analysis

    A. Standard of Review

A court must grant summary judgment if the record shows no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a),

---

decision. ECF No. 1, Ex. 1. Thus, the Court construes Ward's discrimination claim as alleging that he did not receive an award because he is an African American man. *See* ECF No. 10, Ex. 3 at 1, 3. By bringing the retaliation claim, Ward apparently asserts that another reason he did not receive an award is that he had complained about his former manager and been a witness in the former manager's EEO investigation. *See* ECF No. 10, Ex. 7 at 2-3, 7; Ex. 21 at 6-10.

[5] The motion was timely, because the Court had given the Commission until August 26, 2011, to file a response. ECF No. 9.

(c). In considering a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248.

The Court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in [his] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the Court must also abide by its "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003).

B. The Commissioner's Motion for Summary Judgment

The Commissioner argues that (1) Ward's federal lawsuit is procedurally barred, (2) he has not made a *prima facie* case of retaliation or discrimination, and (3) even if he had made a *prima facie* case, the Commissioner has offered legitimate non-discriminatory reasons for not giving Ward a cash performance award. Mem. in Supp. of Mot. for Summ. J. 7-13.

1. Procedural Requirements

The Commissioner argues that this Court lacks subject matter jurisdiction, because Ward failed to file (1) his formal EEO complaint within 15 days of receiving his counseling report, and (2) his federal lawsuit within 90 days of receiving the SSA's final decision. Mem. in Supp. of Mot. for Summ. J. 7.

Title VII creates a right of action for federal employees alleging unlawful employment discrimination. 42 U.S.C. § 2000e-16(c). But a federal employee must exhaust his administrative remedies before exercising that right to sue. *Laber v. Harvey*, 438 F.3d 404, 415-16 (4th Cir. 2006). Employees must contact an EEO counselor to initiate an informal complaint within 45 days of the alleged discrimination. 29 C.F.R. § 1614.105(a)(1). If informal counseling is unsuccessful, the employee must file a formal complaint with the agency within 15 days of receiving notice to do so. 29 C.F.R. § 1614.106(a) & (b). Once the employee has received the agency's final decision, he has 90 days to file a lawsuit in a federal district court. 29 C.F.R. § 1614.407.

A plaintiff's failure to timely exhaust administrative remedies "is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable

tolling."[6]  "The Court applies equitable exceptions sparingly because the certainty and repose the provisions confer will be lost if their application is up for grabs in every case."  *Moret v. Geren*, 494 F. Supp. 2d 329, 337 (D. Md. 2007).

A defendant may waive a limitations argument if it does not raise it promptly in an answer or motion,[7] but "a federal agency does not waive its right to object to untimely filings merely by accepting a complaint for investigation."[8]  To invoke the estoppel doctrine, a Title VII plaintiff must show that "the defendant engaged in affirmative misconduct intended to mislead or deceive [the plaintiff] into missing the deadline."  *Blount*, 32 F. Supp. 2d at 341 (citing *Nealon v. Stone*, 958 F.2d 584, 589 (4th Cir. 1992).  Equitable tolling applies when (1) "the claimant has actively pursued his judicial remedies by filing a defective pleading during the limitations period," or (2) the defendant has tricked the plaintiff into allowing the filing deadline to pass.  *Gayle v. United Parcel Serv., Inc.*, 401 F.3d 222, 226 (4th Cir. 2005).

---

[6] *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982); accord *Zografov v. V.A. Med. Ctr.*, 779 F.2d 967, 969 (4th Cir. 1985).

[7] *Peterson v. Air Line Pilots Ass'n, Int'l*, 759 F.2d 1161, 1164 (4th Cir. 1985).

[8] *Blount v. Shalala*, 32 F. Supp. 2d 339, 341 (D. Md. 1999).

Ward's formal complaint to the SSA was untimely. On November 4, 2009, he received notice that he had 15 days to file a formal complaint. ECF No. 10, Ex. 3 at 9. On December 23, 2009 -- 49 days later -- he signed a formal complaint. ECF No. 10, Ex. 1 at 5. The SSA did not receive the complaint until January 7, 2010 -- 64 days after Ward received notice. ECF No. 10, Ex. 1 at 5. This alone entitles the Commissioner to summary judgment.[9]

Ward's lawsuit is also untimely. On January 14, 2011, he received the SSA's final agency decision. ECF No. 10, Ex. 23. On April 15, 2011 -- 91 days later -- he filed this lawsuit. Ward's failure to sue within the 90-day limit[10] provides a second ground for granting summary judgment for the Commissioner.[11]

---

[9] See e.g., *Adams v. Henderson*, 197 F.R.D. 162, 169 (D. Md. 2000) (dismissing lawsuit because administrative complaint had been filed with the federal agency one day late, and waiver, estoppel, and equitable tolling did not apply); *Blount*, 32 F. Supp. 2d at 341-42 (same).

[10] See 29 C.F.R. § 1614.407. In calculating the 90-day period, time began to run on January 15, 2011, the day after Ward received notice of the final agency decision, and ended the 90th day thereafter, which was April 14, 2011. See 29 C.F.R. § 1614.604(d). April 14, 2011, was a Thursday, not a holiday or a weekend allowing the period to be extended.

[11] See, e.g., *Dixon v. Digital Equip. Corp.*, 976 F.2d 725 (table), 1992 WL 245867, at *1 (4th Cir. 1992) (affirming summary judgment for defendant when plaintiff filed lawsuit 91 days after receiving right-to-sue letter from EEOC); *Harvey v. New Bern Police Dep't*, 813 F.2d 652, 653-54 (4th Cir. 1987) (affirming summary judgment for defendant when plaintiff failed to sue within 90 days); *Jackson v. Locke*, Case No. 08:10-CV-705-

Ward is not entitled to any equitable exceptions to the time limits. He failed to respond to the Commissioner's factual assertions, even after the Clerk warned that failing to do so could result in summary judgment against him. See ECF No. 11. The Commissioner has promptly raised the limitations defense,[12] Ward did not file a defective pleading during the limitations period,[13] and Ward has not shown that the Commissioner misled him into missing the deadline.[14] "The mere fact that [Ward] is proceeding *pro se* in this action is not sufficient to bend the filing rules in his favor."[15] Accordingly, the Court will grant the Commissioner's motion for summary judgment.[16]

C. Ward's Motion to Amend the Complaint

Ward moves to amend his complaint to initiate a class action "on behalf of all protected classes adversely impacted by the practice and policy of race-plus discrimination." ECF No. 16 at 1.

---

AW, 2011 WL 1231301, at *5-6 (D. Md. Mar. 29, 2011) (dismissing complaint because plaintiff failed to sue within 90 days).
[12] See *Peterson*, 759 F.2d at 1164.

[13] See *Gayle*, 401 F.3d at 226.

[14] See *Blount*, 32 F. Supp. 2d at 341; *Gayle*, 401 F.3d at 226.

[15] *Parker v. United Parcel Serv.*, Case No. DKC-11-1206, 2011 WL 6297973, at *5 (D. Md. Dec. 15, 2011) (*citing Baldwin Cnty. Welcome Ctr. V. Brown*, 466 U.S. 147, 152 (1984)).

[16] Because the Court finds that Ward's claim is procedurally barred, it need not determine whether Ward's claim would have succeeded on the merits.

11

Fed. R. Civ. P. 15(a) allows a party to amend his pleading if the opposing party gives written consent, or the Court permits the amendment. Consent will not be given if the proposed amendment is clearly futile. *Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010). A motion to amend a complaint to bring a class action is futile if it would not cure the deficiencies in the plaintiff's case that entitled the defendant to summary judgment.[17]

The Court will deny Ward's motion to amend the complaint. The Commissioner is entitled to summary judgment on Ward's claims, because his claims are time-barred. The claims of the putative class would be identical to Ward's[18] and, thus, would also be time-barred. Amendment would be futile. *See Ausherman*, 352 at 903 n.6. Even if the putative class members' claims would not be identical to Ward's, the result would be the same.

---

[17] *See Shealy v. Winston*, 929 F.2d 1009, 1013-14 (4th Cir. 1991). *See also Ausherman v. Bank of Am. Corp.*, 352 F.3d 896, 902 n.6 (4th Cir. 2003) (motion to amend a complaint to bring a class action is futile if the defendant is entitled to summary judgment on the plaintiff's claims, and the claims of the putative class are identical to those of the plaintiff).

[18] In his motion to amend, Ward reasserts that he was "discriminated against on the basis of race and gender when he failed to receive recognition or exemplary service awards in 2009." ECF No. 16 at 1. He "requests leave to initiate [a] class action on behalf of all protected classes adversely affected," but alleges no facts other than those particular to his claim. Thus, the Court assumes that the putative class members' claims and supporting facts would be identical to those in this complaint.

Converting Ward's claims into a class action would not cure the deficiency -- his failure to exhaust administrative remedies -- that entitles the Defendants to summary judgment on his claim. *See Shealy*, 929 F.2d at 1013-14.

III. Conclusion

For the reasons stated above, the Commissioner's motion to dismiss or for summary judgment will be granted, and Ward's motion to amend the complaint will be denied.

___1/11/12___  
Date

___[signature]___  
William D. Quarles, Jr.  
United States District Judge